IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL RINALDI,** | CIVIL NO. 1:CV-12-0077 |
| Petitioner | (Judge Rambo) |
| v. | |
| **WARDEN BLEDSOE,** | |
| Respondent | |

## M E M O R A N D U M

Presently before the court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Michael Rinaldi ("Rinaldi"), an inmate confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg").  Rinaldi alleges that his constitutional rights were violated in the context of a disciplinary proceeding.  For the reasons that follow, the petition will be denied.

**I.   Facts**

At all times relevant to this petition, Rinaldi was confined at the Federal Correctional Institution at Victorville ("FCI-Victorville") in Angeles, California.  On July 2, 2011, at approximately 10:15 a.m., FCI-Victorville investigating officer Lieutenant J. Hamilton filed an incident report concluding that Rinaldi had participated in a riot between Muslim-affiliated African Americans and a group known as the "Dirty South" at the institution on May 30, 2011 at 3:21 p.m.  (Doc. 5-1

at 15.) The report notes that Rinaldi was observed on videotape entering Unit C-Lower and pushing staff who were trying to hold inmates out of the unit. (*Id.*) When further staff responded to a call for assistance, more inmates pushed their way past staff in order to join in the disturbance. (*Id.*) Staff members were assaulted with chairs. (*Id.*) Due to the incident, FCI-Victorville was placed on lockdown until June 6, 2011. (*Id.*)

As a result of this incident, an investigation was conducted, concluding at 10:15 a.m. on July 2, 2011. (*Id.*) Rinaldi was issued an incident report charging him with Disruptive Conduct (Greatest Severity, most like Rioting) and Being in an Unauthorized Area, in violation of Sections 199 (most like 105) and 316, respectively, of the Bureau of Prisons' ("BOP") disciplinary code. (*Id.* at 19.) As a result of multiple inmate interviews, a review of medical assessment forms, and a review of video recordings and staff memoranda, the investigating officer determined that Rinaldi was involved in the riot. (*Id.* at 15.) The incident report was delivered to Rinaldi on July 3, 2011 at 9:30 a.m. (*Id.*) Lieutenant Hamilton advised Rinaldi of his rights at that time. (*Id.* at 16.) The officer noted that Rinaldi had a "fair attitude." (*Id.*) After completing his investigation, Lieutenant Hamilton referred the incident report to the Unit Disciplinary Committee ("UDC") for further action. (*Id.*)

On July 5, 2011, the UDC held a hearing to review the incident report. (*Id*. at 19.) Rinaldi was provided with a Notice of Discipline Hearing Before the DHO and Inmate Rights at Discipline Hearing Form. (*Id*. at 17-18.) After reviewing the matter, the UDC referred it to the Disciplinary Hearing Officer ("DHO") for further hearing. (*Id*. at 19.)

On July 12, 2011, the DHO held a hearing. (*See id*. at 19-22.) At the outset of the hearing, Rinaldi was advised of his right to appear before the DHO and indicated that he understood. (*Id*. at 20.) In addition, he waived his right to a staff representative and did not request witnesses on his behalf. (*Id*. at 19.) At the hearing, Rinaldi provided the following statement: "I was out of bounds." (*Id*.)

The DHO relied on the reporting officer's statement and Rinaldi's testimony to conclude that, based on the greater weight of the evidence, Rinaldi had committed the Code 199 (most like 105) and 316 violations, Disruptive Conduct (Greatest Severity, most like Rioting) and Being in an Unauthorized Area, respectively. (*Id*. at 20.) For the Code 199 (most like 105) violation, Rinaldi was sanctioned with disallowance of 40 days of good conduct time, 45 days of disciplinary segregation (suspended), and one year loss of visits. (*Id*. at 21.) For the Code 316 violation, Rinaldi was sanctioned

with 15 days disciplinary segregation (suspended) and three months loss of commissary. (*Id*.) The decision was delivered to Rinaldi on July 21, 2011. (*Id*.)

At the time of the filing of Respondent's answer to the instant petition, Rinaldi had filed fifty-three (53) requests for administrative remedies since entering the BOP. (*See* Doc. 5-1 at 4.) Several of these requests pertain to the incident report or DHO hearing and decision at issue in this petition. (*See id*.)

## II.   Discussion

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23.[1] These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a

---

[1] The BOP recently revised this section of Title 28 at 28 C.F.R. §§ 541 through 541.8, effective June 20, 2011.

prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. Because Rinaldi was charged with Disruptive Conduct (Greatest Severity, most like Rioting) and Being in an Unauthorized Area, offenses in the greatest and high severity categories, the matter was referred for a disciplinary hearing.

Greatest and high category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

Further, despite the absence of a statutory exhaustion requirement attached to § 2241, courts have consistently required a petitioner to exhaust administrative remedies

prior to bringing habeas claims under § 2241. *Speight v. Minor*, 245 F. App'x 213, 215 (3d Cir. 2007); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). Exhaustion promotes a number of goals: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981)). Courts, however, have excused exhaustion when it would not promote these goals. *See, e.g.*, *Gambino v. Morris*, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (exhaustion excused upon petitioner demonstrating futility); *Lyons v. United States Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights).

In order for a federal prisoner to exhaust his administrative remedies, he must comply with the prison grievance process set forth in the Code of Federal Regulations. *See* 28 C.F.R. § 542.10-.23; *Lindsay v. Williamson*, No. 1:CV-07-0808, 2007 WL 2155544, at *2 (M.D. Pa. July 26, 2007). An inmate first must informally present his complaint to staff, and staff shall attempt to informally resolve any issue before an

inmate files a request for administrative relief. 28 C.F.R. § 542.13(a). If unsuccessful at informal resolution, the inmate may raise his complaint with the warden of the institution where he is confined. *Id*. at § 542.14(a). If dissatisfied with the response, he may then appeal an adverse decision to the Regional Office and the Central Office of the BOP. *Id*. at §§ 542.15(a) and 542.18. No administrative appeal is considered finally exhausted until a decision is reached on the merits by the BOP's Central Office. *See Sharpe v. Costello*, No. 08-1811, 2008 WL 2736782, at *3 (3d Cir. July 15, 2008).

In the response to the instant habeas petition, Respondent claims that the petition should be dismissed because Rinaldi failed to complete the BOP's administrative appeals process prior to filing in this court. However, because the court concludes that the instant petition is without merit, it need not determine whether to excuse Rinaldi's failure to exhaust.

    **A.**    **Sufficiency of the Evidence**

Rinaldi contests the sufficiency of the evidence relied upon in finding him guilty of the Code 199 (most like 105) and 316 violations. (Doc. 1 at 2-3.) The DHO's decision is required to be supported by some evidence in the record. *See Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *see also Young v. Kann*, 926 F.2d

7

1396, 1402-03 (3d Cir. 1991) (applying *Hill* standard to federal prisoner due process challenges to prison disciplinary proceedings). The standard is met if there was a modicum of evidence from which the conclusion of the tribunal could be deduced. *See Hill*, 472 U.S. at 455. Determining whether this standard is met does not require examination of the entire record, independent assessment of witness credibility, or weighing of the evidence; the relevant question is whether there is evidence in the record that supports the DHO's conclusion. *See id*.

In the instant case, Rinaldi alleges that the DHO did not consider camera footage in making her decision, and therefore the evidence presented was not sufficient for a finding of the Code violations. (Doc. 1 at 3.) However, the record belies this assertion. The DHO specifically noted that she considered the incident report and investigation, as well as Rinaldi's own statement admitting to the accuracy of the incident report with respect to the Code 316 violation. (Doc. 5-1 at 20-21.) She also stated that she relied upon memoranda from staff identifying the behavior of the two groups actively participating in group violence. (*Id*. at 20.) Further, in a declaration filed with the response to the instant petition, the DHO states the following:

> 2.  In his petition, inmate Rinaldi states that I did not review videotape evidence which he states would have proven that he did not

>    commit the prohibited act of Disruptive Conduct, most like Rioting (Code 199, most like 105). Rinaldi admitted that he was in an Unauthorized Area (Code 316). In my DHO report for this hearing, I described that I relied on the statement of the reporting officer who authored the incident report at issue. That officer described that video evidence showed that Rinaldi was in the area of the disturbance and was pushing staff to enter the area.
>
> 3.  When I was informed that inmate Rinaldi had filed this petition, I personally reviewed the video at issue. I could clearly see when the disturbance began, 3 staff unlocked the door to enter the area and 6 inmates pushed passed [sic] them. Two staff physically tried to hold them from entering. Inmate Rinaldi was the 4th inmate of the 6 to push past staff. In addition, inmate Rinaldi ran around in the unit and went straight to the fight that was going on. Because he went into a large group of inmates at that time, I couldn't tell what his actions were other than seeing him make a punching motion.

(*Id*. at 13.)

In light of the evidence, the court finds that there was "some evidence" to support the DHO's decision. The incident report and investigation of Lieutenant Hamilton, as well as the statement of Rinaldi, both of which provided an account of the incident, confirm that the DHO acted with a sound evidentiary basis. *Hill*, 472 U.S. at 455-56. Thus, the petition will be denied with respect to Rinaldi's claim that there was insufficient evidence to support the DHO's decision.

### B. Notice of Charges and Investigation

The record demonstrates that Rinaldi received adequate notice of the incident report from the investigating officer. (Doc. 5-1 at 15-16.) Under 28 C.F.R. § 541.15(a), "Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident." *Id*. The record in this case reflects that Rinaldi received notice of the charges against him at 9:30 a.m. on July 3, 2011, within 24 hours of the conclusion of the investigation of Rinaldi's involvement in the May 30, 2011 incident which took place at 3:21 p.m. (Doc. 5-1 at 15-16.)

Additionally, the record reflects that the charges against Rinaldi were promptly investigated. (*Id*.) Following the issuance of the incident report, a prompt investigation must be undertaken. 28 C.F.R. § 541.14(b). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (finding that in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief). The record reflects that a BOP official,

Lieutenant J. Hamilton, conducted an investigation, beginning after the incident occurred on May 30, 2011, and concluding on July 2, 2011. (Doc. 5-1 at 15-16.) In his report, the investigator noted that he advised Rinaldi of his rights and interviewed him about the incident. (*Id*.) He noted that Rinaldi displayed a "fair attitude." (*Id*.) Lieutenant Hamilton handed Rinaldi a copy of the incident report at the time of the interview. (*Id*.) Since the record shows that an investigation was conducted by a BOP official in a prompt manner and Rinaldi was timely delivered the incident report, the court concludes that Rinaldi was not prejudiced by a violation of BOP regulations such as failure to conduct an investigation. Thus, the petition will be denied with respect to any challenge to the notice of the charges and investigation.

### C. Representation at DHO Hearing

The record reflects that Rinaldi was given the opportunity to have staff representation at the DHO hearing. (*Id*. at 19-22.) It is noted that a prisoner does not have a general constitutional right to have a staff representative appear on his behalf in a disciplinary proceeding. *See Hudson v. Hedgepeth*, 92 F.3d 748, 751 (8th Cir. 1996); *see also Bermudez v. Holt*, No. 1:09-CV-0741, 2010 WL 55713, at *5 (M.D. Pa. Jan. 4, 2010). Rather, due process requires that inmates be provided with assistance only where the inmate is illiterate or "the complexity of the issue makes it

11

unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." *Wolff*, 418 U.S. at 570. In this case, it is documented that Rinaldi waived his right to a staff representative. (Doc. 5-1 at 19, 20.) The DHO report also indicates that at the outset of the hearing, Rinaldi was advised of his rights and he indicated that he understood those rights. (*Id*.) As there is no allegation that Rinaldi is illiterate, and the issues involved in the case were not complex, the petition will be denied with respect to any challenge to staff representation.

### D. Statement, Witnesses, and Documentary Evidence

The record reflects that prior to the DHO hearing, Rinaldi was advised of his rights with regard to making a statement and presenting witness testimony and documentary evidence, and indicated that he understood. (*Id*. at 17-18.) First, the court notes that Rinaldi did make a statement. (*Id*. at 19.) There is nothing in the record reflecting that Rinaldi was prevented from providing further testimony. Further, with respect to witnesses, it is noted initially that the DHO is not required to call witnesses. "The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials

supplied to the DHO." 28 C.F.R. § 541.17(c). Here, Rinaldi indicated that he did not want to call any witnesses. (Doc. 5-1 at 19, 20.) Further, as set forth above, the DHO was not required to call witnesses at all. And finally, with respect to documentary evidence, despite Rinaldi's request to have video surveillance reviewed in support of his plea, the DHO noted that she did not rely on any video evidence; rather, she relied on the incident report and investigation, as well as Rinaldi's statement, in making her decision. As a result, the court cannot find that the lack of witness testimony and documentary evidence at the DHO hearing resulted in a violation of Rinaldi's due process rights. The petition will be denied with respect to any challenge to a right to make a statement and present witness testimony and documentary evidence.

### E. Sanctions

The record reflects that the sanctions imposed by the DHO are within the limits prescribed in BOP regulations. (Doc. 5-1 at 21.) The sanctions that may be imposed upon a finding of guilt of a greatest category offense include, *inter alia*, forfeiting earned statutory good time, forfeiting non-vested good conduct time up to 100 percent, up to 12 months of disciplinary segregation, and loss of privileges. 28 C.F.R. § 541.13. The sanctions that may be imposed upon a finding of guilt of a high category offense include, *inter alia*, forfeiting earned statutory good time, forfeiting

non-vested good conduct time up to 50 percent or up to 60 days, up to 6 months of disciplinary segregation, and loss of privileges. *Id.* Rinaldi is not entitled to relief on this ground because the sanctions imposed upon him were within the limits prescribed in this regulation.

Further, these penalties (forfeiture of good conduct time, disciplinary segregation, and loss of privileges) plainly fall "within the expected perimeters of the sentence imposed by a court of law," and do not "[impose] atypical and significant hardship on [petitioner] in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 485 (1995). Therefore, because the sanctions imposed in this case fall well within the regulatory scheme for such disciplinary infractions, the petition will be denied with respect to any challenge to the sanctions imposed.

### III. Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied. An appropriate order will issue.

s/Sylvia H. Rambo<br>
United States District Judge

Dated: April 2, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL RINALDI,** | : | **CIVIL NO. 1:CV-12-0077** |
| **Petitioner** | : | **(Judge Rambo)** |
| **v.** | : | |
| **WARDEN BLEDSOE,** | : | |
| **Respondent** | : | |

# **O R D E R**

In accordance with the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The motion for discovery (Doc. 8) is **DEEMED MOOT**.

3) The Clerk of Court is directed to **CLOSE** this case.

                                              s/Sylvia H. Rambo
                                             United States District Judge

Dated: April 2, 2012.